## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re<br><br>QUATRO SYSTEMS, INC.<br><br>───────────────<br><br>LYNN FELDMAN, AS TRUSTEE FOR THE BANKRUPTCY ESTATE OF QUATRO SYSTEMS, INC.,<br><br>       Plaintiff,<br><br>       v.<br><br>INTEGRA BUSINESS CENTER, INC., JAMES G. CHEBIN, AND MICHAEL KAZAKEVICH,<br><br>       Defendants. | Chapter 7 Case No. 17-16851 (MDC)<br><br>Adversary Proceeding No. _____ |

### ADVERSARY COMPLAINT

Plaintiff, Lynn Feldman, the Chapter 7 Trustee (the "Trustee" or the "Plaintiff") for the bankruptcy estate (the "Estate") of Quatro Systems, Inc. ("Quatro" or the "Debtor"), by and through her undersigned attorneys, Duane Morris LLP, hereby files this complaint against the Defendants, Integra Business Center, Inc. ("Integra"), James G. Chebin ("Chebin") and Michael Kazakevich ("Kazakevich", and together with Integra and Chebin, the "Defendants") and, in support hereof, avers as follows:

### NATURE OF THE ACTION

1.      As detailed herein, this action by the Trustee seeks: (i) damages for the breaches of fiduciary duty by Quatro's officers, Chebin and Kazakevich, resulting from their usage of the Debtor as their own "piggy bank" and for causing the Debtor to make significant fraudulent transfers either for their own personal debts or for the debts of their related entity, Interdata

Technical Resources, Inc. ("ITR"); (ii) the avoidance and return of those transfers; and (iii) damages for the scheme perpetrated on the Estate and its creditors by Integra with the able and active assistance of Chebin and Kazakevich (the "Quatro Insiders") (once these transfers had been made, resulting in significant liquidity issues for the Debtor) to completely and utterly strip Quatro bare of any remaining value for their own pecuniary advantage and personal enrichment (the "Integra Takeover").

2.      As detailed herein, the Quatro Insiders used the Debtor as their personal piggy bank, looting value from Quatro for their sole benefit.

3.      To effectuate this transfer of value from Quatro to the Quatro Insiders, the Quatro Insiders (a) caused Quatro to make payments directly to the Quatro Insiders in exchange for which Quatro received little or no value; (b) caused Quatro to pay certain third parties amounts which the Quatro Insiders, individually, owed to such entities in violation of their fiduciary duties to Quatro and/or (c) caused Quatro to pay certain third parties amounts which ITR, itself and not Quatro, owed to such entities.

4.      In addition to these activities, the Quatro Insiders also worked with Integra to effectuate the Integra Takeover, a transaction which was designed solely to benefit Integra, Chebin, and Kazakevich, at the expense and to the detriment of Quatro's creditors.

5.      As a consequence of the Integra Takeover, Quatro was stripped of not only the assets that Integra was supposed to acquire, but also of additional assets that Integra had not purchased.

6.      Meanwhile, Quatro was left with virtually all its liabilities other than six (6) itemized vendor contracts assumed by Integra as part of the APA.[1]

---

[1] On February 1, 2017, Quatro and Integra executed an Asset Purchase Agreement (the "APA"), effective February 15, 2017, whereby Integra purported to purchase certain assets (the "Acquired Assets", defined in Schedule A of the

7.      Devoid of substantially all of its assets, Quatro was left grossly undercapitalized, without sufficient assets to pay its debts, and destined to fail.

8.      Following the Integra Takeover, Quatro was saddled with a massive amount of debt for which it received little or no value in return, became financially hamstrung as the company continued to deteriorate, and was unable to access necessary credit and liquidity or pursue other options.

9.      In short, the Integra Takeover set Quatro on a path to inevitable bankruptcy.

10.     At all relevant times, the Defendants knew or should have known that Quatro, post-Integra Takeover, was doomed to fail.

11.     Indeed, Defendants structured the transaction so that there was no alternative but failure.

12.     Chebin and Kazakevich (collectively, the "Quatro Insiders"), who, at all relevant times, were wholly conflicted in their loyalties and allegiances and corresponding duties to Quatro and its creditors, breached their fiduciary duties by, among other things, acting solely in their own interests instead of in the best interests of Quatro and its stakeholders, including its creditors. They disregarded those duties in exchange for a golden parachute from Integra.

## JURISDICTION

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b).

---

APA as all of Quatro's tangible and intangible assets including, but not limited to, customer accounts identified in an attached file; client contact information; the Quatro name, URL, website, phone and fax numbers; equipment identified in attached files; and office furniture) and assume certain liabilities (itemized in Schedule C of the APA to include six (6) vendor contracts used by Quatro in its operations).

14.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

15.    Plaintiff, Lynn E. Feldman, is the court-appointed Chapter 7 Trustee for the bankruptcy estate of Quatro Systems, Inc.

16.    Quatro was, at all times relevant hereto, a Pennsylvania corporation.

17.    On October 6, 2017 (the "Petition Date"), Quatro filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court").

18.    Also on the Petition Date, the Trustee was appointed as Chapter 7 Trustee for the Estate.

19.    Defendant Integra is a Pennsylvania corporation with a principal place of business at 7248 Tilghman Street, Suite 120, Allentown, PA 18106.

20.    Upon information and belief, Defendant Chebin is a citizen of the Commonwealth of Pennsylvania, residing at 35 Hampshire Drive, Warminster, PA 18974.

21.    Upon information and belief, Defendant Kazakevich is a citizen of the Commonwealth of Pennsylvania, residing at 34 Nikol Drive, Richboro, PA 18954.

22.    At all relevant times, Chebin was the President, CEO, and COO of Quatro and a 50% shareholder of Quatro.

23.    At all relevant times, Kazakevich was the Secretary and Treasurer of Quatro and a 50% shareholder of Quatro.

## FACTUAL BACKGROUND

### Quatro

24.    Quatro was founded in 1989 and headquartered in Horsham, Pennsylvania.

25.    Quatro's primary business was providing technology logistics, IT infrastructure support, technology/life cycle management, technical support, management information systems advisory services, strategy, consulting, data center and cloud computing services, and product sales.

26.    Quatro's territorial footprint covered the Mid-Atlantic region, particularly within Eastern Pennsylvania.

**Declining Annual Gross Revenue and Attempts to Find a Buyer for Quatro**

27.    In the years preceding the Petition Date, Quatro was a successful operation, generating annual gross revenue in the multiple millions of dollars. For example, gross revenue in 2015 was approximately $5.7 million, and in 2016 was approximately $3 million.

28.    However, by late 2016, Quatro was experiencing financial difficulties resulting from a variety of factors, including, without limitation, declining revenues, high debt, high operating costs, and difficulty in securing credit.

29.    Rather than trying to reverse the revenue decline of Quatro and to improve its overall profitability by seeking professional help in the form of a restructuring advisor, an investment banker or a broker, the Quatro Insiders devised a plan to sell Quatro's assets, develop an exit strategy for themselves, and leave Quatro saddled with significant liabilities and without any operating assets to generate revenue to satisfy those liabilities.

30.    Indeed, instead of entering into a transaction to benefit Quatro, Quatro and its principals consummated agreements with Integra that would doom Quatro and benefit its insiders—Chebin and Kazakevich—and Integra.

31.    This plan included, but was not limited to, the following steps: (1) placing Quatro's valuable assets safely beyond reach of its creditors by entering into an asset purchase agreement; (2) structuring the Integra Takeover so that Integra only assumed a limited number and amount of

Quatro's liabilities, which, in turn, stranded Quatro with liabilities it could not satisfy and without assets or manpower to generate revenue; and (3) negotiating lucrative positions at Integra for the Quatro Insiders.

### Defendants' Knowledge of Quatro's Inherent Value as a Going Concern

32.    Prior to the parties' entry into the APA, Chebin, Kazakech, and Integra realized that Quatro's most significant issue was its declining gross revenue, particularly with respect to product sales impacted by Quatro's inability to access new credit, an issue which the Defendants thought could be remedied by a transaction with Integra.

33.    Integra well understood—and indeed counted upon—the assumption that Integra would be in a much better position to operate Quatro's business.

34.    In particular, Integra's President, Marty Andrefski, in an email to Jeffrey Reed of Integra on December 27, 2016, expressed hope that Integra could "capture most of" Quatro's license and renewal business, as well as regain long time product sales clients whose business had plummeted due to Quatro's credit issues.

35.    Indeed, as Andrefski advised the Quatro Insiders, Quatro's active account list was "the main asset we [Integra] are purchasing."

36.    Further, Chebin and Kazakevich's employment agreements with Integra incentivized them to foster and grow Quatro's business, once they came to Integra, offering attractive commissions on sales to legacy Quatro accounts.

37.    Again, all of this was undertaken with the intent to benefit Integra and the Quatro Insiders to the detriment of Quatro and its creditors.

### Integra Plans to Raid Quatro's Assets But Leave It Saddled With Liabilities

38.    Starting in December 2016, Integra and the Quatro Insiders began serious discussions about a possible transaction.

39.     Prior to entering into the APA, the Quatro Insiders and Andrefski exchanged lengthy emails about the status of various aspects of Quatro's business and liabilities, a possible deal structure, and the terms of Chebin and Kazakevich's prospective employment with Integra.

40.     Meanwhile, Chebin and Kazakech were drawing significant salaries from Quatro.

41.     The key to Integra's plan on infusing Quatro with cash was entirely dependent upon Integra taking over Quatro's *entire* operations but only assuming a limited number of its liabilities, all in one fell swoop.

42.     Time and again, Integra expressed that its goal was to take over Quatro's business without being saddled with Quatro's debt.

43.     On December 11, 2016, Andrefski told the Quatro Insiders in an email that "We see the only real acquisition value as assets . . . We are not interested in taking any debt that is owed by the corporation or tied to you personally."

44.     On December 19, 2016, Andrefski told the Quatro Insiders in an email that: "At this point I want to be very candid with you both in laying out our POV and interest in acquisition. I feel that is only fair for you so decisions can be made on your end as well to insure we all have a clear understanding of our position. . . . I must restate again that we are only interested in an asset purchase of Quatro, which means any and all company liabilities and personal liabilities would remain for you to deal with."

45.     On January 4, 2017, Integra sent the Quatro Insiders a Proposal to Acquire, in which Integra again made clear that "We are not interested in taking any debt that is owed by [Quatro] or tied to you personally."

46.     On January 13, 2017, Andrefski sent the Quatro Insiders an initial draft of the APA.

47.    On January 16, 2017, Andrefski again explained to the Quatro Insiders that Integra wanted Quatro's business, but not its debts, in an email stating: "Our attorney will want to speak directly to your attorney before we finalize any deal.  Basically we /he has a fair amount of concern around your liabilities and what your plan is to close them out so that creditors are not trying to come after integraONE to collect. Even though this is an asset only purchase."

**Integra Takes Over and Operates Quatro's Business**

48.    On February 1, 2017, Quatro and Integra executed the APA.

49.    The Purchase Price of $400,000 ("Purchase Price", see APA para. 2.1), was allocated, as set forth in Schedule D of the APA, as follows: $360,000 to furniture, fixtures and equipment, and $40,000 to customer lists and goodwill.

50.    In addition to the Purchase Price payable by Integra to Quatro, the APA provided for the payment of Commissions and Other Payments to be paid by Integra to Chebin and Kazakevich after the closing of the APA.

51.    These payments included a percentage of the face value of certain contracts sold by Chebin, Kazkevich, or other Quatro staff for a period of two years; commissions on product sales by Chebin or Kazakevich for two years; and additional compensation based on product and service sales to inactive legacy Quatro accounts and on Quatro employees who remained employed with Integra.  See APA para. 2.2(i)-(iv).

52.    In addition to the APA, on February 15, 2017, Quatro, Integra, Chebin, and Kazakevich executed a Factoring and Security Agreement (the "FASA"), whereby Integra agreed to advance $38,251.19 on behalf of Quatro to Quatro's landlord for past due rent, and other potential liabilities of Quatro (the "Advance"), in exchange for the right to collect receivables from certain accounts of Quatro identified in Exhibit A of the FASA.

53.    Central to the FASA was the concept that Integra would only have the right to collect the receivables until such time that the amount of the Advance was satisfied, at which time the right to collect the receivables from those accounts reverted back to Quatro.

54.    According to the terms of the FASA, Integra was to provide Quatro with a monthly accounting of its collection efforts pertaining to the accounts receivables identified in Exhibit A of the FASA.

55.    In reality, the APA and the FASA were part of a carefully orchestrated plan by which Integra intended to (and did) (i) take control of Quatro as a going concern, (ii) use, for its own pecuniary benefit, Quatro's assets which not only repaid the Advance but gave Integra a significant windfall as it did, in fact, collect significantly more on the receivables identified in Exhibit A of the FASA than what it was actually owed on account of the Advance, and (iii) acquire a turnkey operation—without providing reasonably equivalent value and/or adequate consideration therefor to Quatro or its creditors.

56.    The motivation behind the Integra Takeover was driven entirely by the greed of the Quatro Insiders, who structured and consummated the Integra Takeover in order to strand Quatro with significant corporate liabilities and capitalize—and personally profit—from the sale of Quatro's assets.

57.    At the time of the APA and FASA, Quatro—although it had experienced a sharp decline in annual gross revenue from the year 2015 to the year 2016—had significant value as a going concern, reporting annual gross revenue in 2016 in the amount of approximately $3 million.

58.    With full knowledge of the significant value of the Quatro concern—but knowingly purchasing only certain assets and temporary rights to certain accounts receivable from Quatro—Integra essentially took control of Quatro's entire operations, for a fraction of its ultimate value.

- 9 -

59.     Integra executed its scheme and achieved this remarkable bargain through, among other things, the complicity of Chebin, the President and CEO of Quatro, and Kazakevich, the Secretary and Treasurer of Quatro.

60.     In exchange for Chebin's and Kazakevich's willingness to sell out Quatro and its creditors (to whom Chebin and Kazakevich owed fiduciary duties of care, loyalty and good faith), Integra offered Chebin and Kazakevich, each, compensation in the amount of $100,000 per year, plus year-end retention bonuses of $25,000 each year for two years following the Integra Takeover, as well as additional commissions based in part on sales to legacy Quatro customers.

61.     Simply put, the APA and the FASA were a front designed to allow Integra to acquire *all* of Quatro's valuable assets (including, but not limited to, customer lists and relationships, goodwill, and other intangibles (the "Quatro Assets")) but only a small fraction of its liabilities, the latter of which were ultimately too large for Quatro to overcome.

62.     On or about February 15, 2017, the APA closed.

63.     Pursuant to its terms, Integra paid to Quatro $400,000; in exchange, Integra received all of Quatro's assets except those excluded in Schedule B of the APA (that is, all of the inventory in Quatro's office in Horsham, Pennsylvania; all equipment used by Quatro in its Horsham, Pennsylvania office; all of Quatro's remaining furniture and electronic equipment not included in Schedule A; and Quatro's van). *See* APA, Schedule B.

64.     Chebin and Kazakevich executed the APA on behalf of Quatro, and approved the Integra Takeover in their capacity as the sole officers and/or directors of the company.

65.     In addition, Chebin executed the FASA on behalf of Quatro, and approved the transaction as the company's CEO.

66.     Immediately thereafter, Chebin and Kazakevich began working for Integra.

                    Document        Page 11 of 39

67.    After the close of the APA, Integra took over the business of operating Quatro, including, but not limited to, collecting receivables from the accounts identified in the FASA. Integra also absorbed or terminated the remaining Quatro employees.

68.    Furthermore, post-closing, the Quatro Insiders began to draw their new salaries and to receive handsome commissions for their services to Integra, including, but not limited to, the work they were conducting in connection with the accounts over which Integra had only temporary control.

**Value Lost by Quatro's Estate as a Result of Defendants' Actions**

69.    As set forth above, the Defendants contemplated and intended that, once the APA closed, the Quatro Assets would become part of Integra.

70.    Indeed, the transfer of a turnkey operation to Integra at a far-below market price was the driving force behind the APA, orchestrated by Integra with the complicity of Chebin and Kazakevich.

71.    Through the Integra Takeover, Integra knowingly acquired the entirety of Quatro's business.

72.    Integra and the Quatro Insiders believed that the most promising aspects of this business could continue to grow and achieve additional sales.

73.    Indeed, with respect to the fall in product sales that were the main force behind Quatro's revenue drop of nearly $3 million from 2015 to 2016, Integra believed that, once freed of Quatro's credit difficulties, that business would again become robust, especially since Integra would have much greater access to credit than Quatro.

74.    However, at the end of the day, Integra knowingly and deliberately orchestrated the Integra Takeover without providing Quatro with reasonable value or consideration for what Integra received in exchange—essentially the entire going concern of Quatro.

75.    The net effect of this transaction was entirely to the detriment of Quatro's creditors, who were left with a shell of a formerly viable company with significant liabilities and no assets.

76.    Chebin and Kazakevich willingly acceded to the Integra Takeover because they wanted to secure future employment with Integra.

77.    Had Chebin and Kazakevich been less concerned with securing future employment with Integra and more forceful in their representation of the company in the Integra Takeover, Quatro and its creditors would have received additional value for Quatro's assets in order to be in a position to pay down its liabilities.

78.    In so doing, Chebin and Kazakevich breached various fiduciary obligations they owed to Quatro and its creditors.

### Harm to Quatro and Its Creditors

79.    After Integra successfully stripped Quatro of its value as a going concern, the remaining shell was doomed to spiral into bankruptcy.

80.    Without ongoing operations, Quatro had no hope of paying off the liabilities it had retained.

81.    Since Quatro declared bankruptcy on October 6, 2017, nearly a half million dollars in claims have been filed against the Estate, which has few, if any, assets with which to pay.

### The Insider Fraudulent Transfers

82.    In addition to guaranteeing Quatro's demise by forcing Quatro to enter into the Integra Takeover, the Quatro Insiders also improperly used Quatro as their personal piggy bank by causing Quatro to make payments: (i) directly to the Quatro Insiders; (ii) to third parties on the Quatro Insiders' behalf or (iii) to third parties on behalf of ITR.

83.    During the four year period prior to the Petition Date, Quatro made certain transfers to Chebin in exchange for which Quatro received little to no value, which, in the aggregate, total

$13,327.30 (collectively, the "Chebin Transfers"). A schedule of the amounts and dates of the Chebin Transfers is attached hereto as **Exhibit 1**.

84.    During the four year period prior to the Petition Date, Quatro made certain transfers to Kazakevich in exchange for which Quatro received little to no value, which, in the aggregate, total $420,973.96 (collectively, the "Kazakevich Transfers" and, together with the Chebin Transfers, the "Direct Insider Transfers"). A schedule of the amounts and dates of the Kazakevich Transfers is attached hereto as **Exhibit 2**.

85.    In addition to the Direct Insider Transfers, the Quatro Insiders also caused Quatro to make payments to certain third parties that were on account of debts personally owed by the Quatro Insiders and/or owed by ITR to those third parties (collectively, the "Third Party Insider Transfers" and together with the Direct Insider Transfers, the "Insider Fraudulent Transfers"). Schedules of the amounts and dates of the Third Party Insider Transfers are attached hereto as **Exhibit 3** which totals $1,864,896.83 (for amounts paid by Quatro to third parties on account of the personal debts of the Quatro Insiders), and **Exhibit 4** which has a net total of $114,260.29 after removing payments included on the other Exhibits hereto (for amounts paid by Quatro to third parties on account of the debts of ITR).

86.    The amounts on Exhibit 4 were recorded by Quatro in its accounting records as intercompany loans receivable from ITR. Quatro's recording of these payments as such indicates that it had full knowledge that the transactions benefitted ITR and provided no value or benefit to Quatro. Furthermore, the intercompany receivable due from ITR on Quatro's books indicates the unpaid balance due to the Debtor is $511,956. Tellingly, this receivable was not included as part of the APA, which is an additional indication that Integra was only interested in stripping Debtor assets that had value and could be monetized. Had this receivable been recovered and/or included

as part of the APA, the Debtor certainly would have received significantly more than the $400,000

purchase price and therefore would have been able to pay a much better distribution to creditors.

87.    The Insider Fraudulent Transfers conferred no benefit on Quatro, but rather

hastened its demise.

88.    In causing Quatro to make the Insider Fraudulent Transfers, the Quatro Insiders

looted Quatro—and by extension, its creditors—for their exclusive benefit.

**COUNT I**
**AVOIDANCE AND RECOVERY OF TRANSFERS PURSUANT TO SECTION**
**548(A)(1)(B) OF THE BANKRUPTCY CODE**
**(AGAINST INTEGRA)**

89.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set

forth herein.

90.    Prior to the APA, Quatro possessed an interest in the Quatro Assets.

91.    Contemporaneous with the APA, Quatro (under the direction and with the approval

of Chebin and Kazakevich) transferred the Quatro Assets to Integra (the "Integra Fraudulent

Transfer").

92.    The Integra Fraudulent Transfer constituted a "transfer of an interest of the debtor

in property" under 11 U.S.C. § 548.

93.    The assets transferred to Integra were assets that were formerly the property of

Quatro.

94.    As detailed herein, the Integra Fraudulent Transfer transferred valuable assets of

Quatro to Integra for less than reasonably equivalent value and/or inadequate consideration as

Integra essentially received the entire goodwill/enterprise value of Quatro while only paying a

fraction of its worth.

95.    Instead, the Integra Fraudulent Transfer was made solely to or for the benefit of Integra.

96.    At the time of the Integra Takeover, the Debtor had at least one creditor in existence prior to making the Integra Fraudulent Transfer.

97.    The Quatro Insiders forced the Debtor made the Integra Fraudulent Transfer to Integra as part of the Integra Takeover, the result of which left the Debtor with no revenue-generating assets to satisfy its obligations to its creditors, but left Integra rich with a new turnkey operation "purchased" for a pittance, and left Chebin and Kazakevich, the Debtor's former principals, richly compensated on their way out the door.

98.    As detailed herein, Integra knew that the Integra Fraudulent Transfer involved an inadequacy of consideration—*i.e.*, that it involved a transfer of Quatro's valuable assets to Integra and only limited liabilities—because, among other things, at the time of the Integra Fraudulent Transfer, Integra knew: (i) the unfavorable financial condition of Quatro; (ii) the insolvency or probable insolvency of Quatro following the transfer of the Quatro Assets under the APA; and (iii) the fraudulent purpose of the Integra Fraudulent Transfer.

99.    Because Integra knew that it was obtaining essentially all of the assets of Quatro for a pittance and leaving Quatro holding the bag of the majority of its liabilities, Integra did not receive or take the assets transferred as part of the Integra Fraudulent Transfer in good faith.

100.    As detailed herein, Quatro became insolvent as a result of the Integra Fraudulent Transfer, which led to its inability to pay its debts as they became due.

101.    The Integra Fraudulent Transfer was made within the two (2) year period immediately preceding the Petition Date.

102.   Based on the foregoing, the Integra Fraudulent Transfer constitutes an avoidable fraudulent transfer pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

103.   Despite prior demand, Integra has failed and refused to return the Integra Fraudulent Transfer (or the monetary equivalent thereof) to the Plaintiff.

WHEREFORE, Plaintiff is entitled to avoid and recover, for the benefit of the unsecured creditors, (i) the reasonably equivalent value of the Quatro Assets; (ii) interest upon such amounts to the extent recoverable pursuant to the law; and (iii) reasonable attorneys' fees and costs.

### COUNT II
### RECOVERY OF TRANSFERS PURSUANT TO 11 U.S.C. § 550
### (AGAINST INTEGRA)

104.   Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

105.   Based upon the foregoing, the Plaintiff is entitled to avoid the Integra Fraudulent Transfer pursuant to Bankruptcy Code section 548(a)(1)(B).

106.   Integra was the initial transferee or was the immediate or mediate transferee of such initial transferee of the Integra Fraudulent Transfer and is liable for the return of the Integra Fraudulent Transfer (or the amount thereof).

107.   As a recipient of the actual and constructive fraudulent transfers set forth herein above, Integra is liable as the initial transferee of the actual and constructive fraudulent transfers made by the Debtor.

108.   Pursuant to Bankruptcy Code section 550(a), the Plaintiff is entitled to recover from Integra the Integra Fraudulent Transfer or the amount thereof plus interest thereon to the date of payment as well as costs of this action.

WHEREFORE, Plaintiff is entitled to avoid and recover, for the benefit of the unsecured creditors, (i) any payments received by Integra in connection with the Integra Fraudulent Transfer,

pursuant to 11 U.S.C. §§ 548(a)(1)(B), and 550; and (ii) interest upon such amounts to the extent

recoverable pursuant to the law.

**COUNT III**
**UNJUST ENRICHMENT**
**(AGAINST INTEGRA)**

109.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set

forth herein.

110.    In light of Integra's improper actions, as described hereinabove, Integra has been

unjustly enriched by its receipt of valuable property, in the form of the Quatro Assets, for less than

reasonably equivalent value and/or consideration.

111.    The Debtor conferred significant monetary benefits upon Integra in the form of

enabling Integra to exercise complete dominion, power and control over the Quatro Assets.

112.    As detailed herein, Integra was aware of, and had knowledge of, the benefits

conferred upon it by the Debtor.

113.    Under these circumstances, as described hereinabove, it would be unjust and

inequitable to permit Integra to retain the moneys, including, but not limited to, any and all value

revenue or other value derived from Integra's improper use of the Quatro Assets, that Integra

wrongfully and passively received without providing reasonably equivalent value and/or sufficient

consideration therefor.

114.    Plaintiff is therefore entitled to disgorgement and restitution of all economic

benefits that Integra derived from the Debtor.

WHEREFORE, Plaintiff is entitled to judgment in her favor and against Integra in an

amount to be determined at trial based on harm to the Debtor's unsecured creditors, including, but

not limited to, any and all revenue or other value derived from Integra's improper use of the Quatro

Assets, attorneys' fees and costs, prejudgment interest, and any and all such other further relief as the Court deems necessary and proper.

## COUNT IV
## BREACH OF FIDUCIARY DUTY OF LOYALTY – INTEGRA TAKEOVER
## (AGAINST CHEBIN AND KAZAKEVICH)

115.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

116.    At the time of the Integra Takeover and at all relevant times thereafter, there were creditors of Quatro who could have received payment in full absent the fraudulent scheme of the Defendants in entering into the APA and FASA for the sole benefit of Integra and the Quatro Insiders.

117.    At all relevant times, Chebin was the President and CEO and 50% shareholder of Quatro.

118.    By virtue of Chebin's positions, a fiduciary relationship existed between Chebin and Quatro.

119.    Accordingly, Chebin owed fiduciary duties, including, but not limited to, the duty of loyalty, to Quatro and Quatro's stakeholders, including its creditors.

120.    At all relevant times, Kazakevich was the Secretary and Treasurer and 50% shareholder of Quatro.

121.    By virtue of Kazakevich's positions, a fiduciary relationship existed between Kazakevich and Quatro.

122.    Accordingly, Kazakevich owed fiduciary duties, including, but not limited to, the duty of loyalty, to Quatro and Quatro's stakeholders.

123.    In addition, at the time of the Integra Takeover, Quatro was having difficulty paying its debts, and thus was, at least, within the zone of insolvency.

124.    As a consequence, the Quatro Insiders owed fiduciary duties to Quatro's creditors at the time of the Integra Takeover.

125.    By participating in the orchestration and consummation of the above-described scheme to transfer to Integra, the Quatro Insiders breached their fiduciary duties to Quatro and its creditors—including, but not limited to, the duties of loyalty and good faith—and acted with gross negligence and recklessness by (1) disregarding what they knew or should have known about the effect of the transfer of the Quatro Assets on Quatro and its creditors; (2) abdicating their decision-making authority on behalf of Quatro and not acting in the best interests of Quatro; and (3) transferring the Quatro Assets to Integra for less than reasonably equivalent value and/or inadequate consideration, solely to benefit Integra and themselves.

126.    Indeed, the Quatro Insiders were personally motivated, not by the desire to benefit Quatro or its creditors, but to achieve a sale of Quatro's business to Integra which would, in turn, guarantee lucrative employment for themselves at Integra.

127.    The Quatro Insiders knew or should have known that the Quatro Assets were Quatro's best and likely sole means of increasing the value of its estate and increasing the amount of repayment it could make to its creditors.

128.    Rather than engage a broker or seek any other third party acquirer, the Quatro Insiders proceeded with the Integra Takeover not because it was in the best interests of Quatro or its creditors but, rather, because it was in their own self-interest in that Integra had offered them lucrative positions post-closing.

129.    The Quatro Insiders also caused Quatro to use its funds to pay for ITR's expenses, which diminished corporate assets and left Quatro with a substantial insider receivable balance

that was purposely excluded from the APA but could have created value for creditors had it been collected.

130.    Because of the Quatro Insiders' breach of fiduciary duties to Quatro and its creditors, Quatro was forced into bankruptcy, substantially reducing the payments Quatro could make to its creditors.

131.    Despite knowing that Quatro would not be able to continue as a profitable venture without the assets sold to Integra, the Quatro Insiders maintained their strategy in order to benefit themselves personally, and thereby did not act in the interests of Quatro or its creditors.

132.    The Quatro Insiders' breach of their fiduciary duties to Quatro, as described hereinabove, was a significant factor in causing the demise of Quatro.

WHEREFORE, Plaintiff is entitled to judgment in her favor and against Chebin and Kazakevich and in an amount to be determined at trial based on the harm to the Debtor's unsecured creditors as a result of the Quatro Insiders' breach of fiduciary duties to Quatro and Quatro's creditors on account of the Integra Takeover; and interest upon such amounts to the extent recoverable.

## COUNT V
## BREACH OF FIDUCIARY DUTY OF CARE – INTEGRA TAKEOVER
### (AGAINST CHEBIN AND KAZAKEVICH)

133.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

134.    At all relevant times, Chebin was the President and CEO and 50% shareholder of Quatro.

135.    By virtue of Chebin's positions and role as member of the Quatro Board of Directors, he owed fiduciary duties, including, but not limited to, the fiduciary duty of care, to Quatro and Quatro's stakeholders, including its creditors.

- 20 -

136.    At all relevant times, Kazakevich was the Secretary and Treasurer and 50% shareholder of Quatro.

137.    By virtue of Kazakevich's positions, a fiduciary relationship existed between Kazakevich and Quatro.

138.    Accordingly, the Quatro Insiders owed fiduciary duties, including, but not limited to, the duty of care, to Quatro and Quatro's stakeholders, including its creditors.

139.    By virtue of Quatro's insolvency and/or undercapitalization, the Quatro Insiders owed fiduciary duties to Quatro's unsecured creditors, including, but not limited to, the duty of care (1) to preserve and maximize the value of Quatro's assets for the benefit of its unsecured creditors, and (2) to act in a manner that would not injure Quatro or its unsecured creditors.

140.    As fiduciaries, the Quatro Insiders were obligated by the duty of care to act in a fully informed manner, in a manner consistent with the interests of Quatro, and with the highest degree of good faith.

141.    As fiduciaries, the Quatro Insiders were also obligated by their duty of care to act at all times using the amount of care that a reasonable person would use under similar circumstances.

142.    At no time prior to entry into the APA did the Quatro Insiders seek to retain an investment banker, a broker or a restructuring advisory firm, all of which could have provided more financially beneficial alternatives than the Integra Takeover.

143.    Rather than seek professional advice and act in an informed manner, the Quatro Insiders jumped at the chance to do the Integra deal, because the Integra deal offered them significant personal gain.

144.    The Quatro Insiders breached their fiduciary duties to Quatro and its creditors—including, but not limited to, the duties of care and good faith—and acted with gross negligence and recklessness by (1) not seeking professional advice concerning what alternatives existed to the Integra Takeover; (2) not seeking professional advice concerning the pros and cons associated with the Integra Takeover; (3) disregarding what they knew or should have known about the effect of the transfer of the Quatro Assets on Quatro and its creditors; (4) abdicating their decision-making authority on behalf of Quatro to Integra (again, motivated solely for their own self-interest) and not acting in the best interests of Quatro; and (5) permitting the transfer of the Quatro Assets to Integra for less than reasonably equivalent value and/or inadequate consideration, solely to benefit Integra and themselves.

145.    As a result of the Integra Takeover, Quatro became insolvent or was left with unreasonably small business capital in relation to the business in which it was engaged, as it was left with a sum of debts, at fair valuations, that were much greater than the sum of its assets.

146.    Because of the Quatro Insiders' breach of fiduciary duties to Quatro and its creditors, Quatro was forced into bankruptcy, substantially reducing the payments that could be made to Quatro's creditors.

147.    The Quatro Insiders' breach of their fiduciary duties to Quatro, as described hereinabove, was a significant factor in causing the demise of Quatro.

148.    The Quatro Insiders directly benefited from the Integra Takeover to the detriment of Quatro and its creditors.

149.    The Quatro Insiders acted in their own interest even though they knew or should have known that it would result in harm to Quatro and its unsecured creditors.

150.    Quatro and its unsecured creditors were substantially damaged as a result of the Quatro Insiders' breaches of fiduciary duties.

WHEREFORE, Plaintiff is entitled to judgment in her favor and against Chebin and Kazakevich and in an amount to be determined at trial based on the harm to the Debtor's unsecured creditors as a result of the Quatro Insiders' breach of fiduciary duties to Quatro and Quatro's creditors on account of the Integra Takeover; and interest upon such amounts to the extent recoverable.

## COUNT VI
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY – INTEGRA TAKEOVER
### (AGAINST INTEGRA)

151.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

152.    As the President and CEO and 50% shareholder of Quatro at all times relevant hereto, Chebin owed fiduciary duties of good faith and fair dealing, care, loyalty, and oversight to Quatro.

153.    As the Secretary and Treasurer and 50% shareholder of Quatro at all times relevant hereto, Kazakevich owed fiduciary duties of good faith and fair dealing, care, loyalty, and oversight to Quatro.

154.    Chebin and Kazakevich abdicated their fiduciary duties to Quatro by transferring the Quatro Assets to Integra for less than reasonably equivalent value and/or inadequate consideration.

155.    At the time of the transfer of the Quatro Assets, Quatro was insolvent or left with unreasonably small business capital in relation to the business in which it was engaged, and was left with a sum of debts, at fair valuations, greater than the sum of its assets.

156. By virtue of Quatro's insolvency and/or undercapitalization, Chebin and Kazakevich owed fiduciary duties to Quatro's unsecured creditors, including, but not limited to, the duties of loyalty and care (1) to preserve and maximize the value of Quatro's assets for the benefit of its unsecured creditors, and (2) to act in a manner that would not injure Quatro or its unsecured creditors.

157. In violation of their fiduciary duties to Quatro and its unsecured creditors, the Quatro Insiders conducted the business of Quatro in a knowingly reckless manner, carrying out practices that they knew or should have known would not inure to the benefit of Quatro or its unsecured creditors, but rather were intended to be solely for their own and each other's benefit.

158. The Quatro Insiders directly benefited from approving the transfer of the Quatro Assets to Integra by the promise of lucrative future employment with Integra for themselves.

159. The Quatro Insiders knew or should have known that their action and/or inaction would result in harm to Quatro and its unsecured creditors.

160. Integra knew of the Quatro Insiders' fiduciary duty and provided substantial assistance to the Quatro Insiders' breaches of that duty by, among other things (1) masterminding a transaction that would purportedly transfer to Integra essentially all of Quatro's assets but leave Quatro saddled with significant liabilities, and (2) intentionally and purposefully inducing the Quatro Insiders to transfer the Quatro Assets for less than reasonably equivalent value and/or inadequate consideration.

161. Quatro and its unsecured creditors were substantially damaged as a result of the Quatro Insiders' breaches of fiduciary duties.

WHEREFORE, Plaintiff is entitled to judgment in her favor and against Integra in an amount to be determined at trial based on the harm to the Debtor's unsecured creditors as a result

of Integra's aiding and abetting Chebin's and Kazakevich's breaches of fiduciary duties to Quatro

and Quatro's creditors; and interest upon such amounts to the extent recoverable.

### COUNT VII
### NEGLIGENCE
### (AGAINST CHEBIN AND KAZAKEVICH)

162.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set

forth herein.

163.    By virtue of their positions as directors, officers, members, and/or managers of

Quatro, Chebin and Kazakevich owed duties to Quatro, including but not limited to the duties of

good faith and fair dealing, loyalty, and care, to use reasonable skill and care employed by

directors, officers, members and/or managers in the same or similar circumstances.

164.    Chebin and Kazakevich were negligent in carrying out and, therefore, breached

their duties and responsibilities vis-à-vis Quatro in many ways, as described in detail hereinabove,

including but not limited to their mismanagement of Quatro and their failure to take any steps to

ensure that, after the Integra Takeover, Quatro would have sufficient assets to operate and/or

satisfy its liabilities.

165.    As a direct and proximate result of the Quatro Insiders' failure to carry out their

duties to Quatro, Quatro and its creditors suffered damages.

WHEREFORE, Plaintiff is entitled to recover, for the benefit of the unsecured creditors,

damages related to the Quatro Insiders' negligence in an amount to be determined at trial.

### COUNT VIII
### BREACH OF CONTRACT
### (AGAINST INTEGRA)

166.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set

forth herein.

167. Pursuant to sections 1.1.1 and 1.1.4 of the FASA, Integra agreed to partially purchase the Quatro accounts listed on Exhibit A to the FASA in exchange for the Advance.

168. In accordance with the FASA, Integra would collect the accounts' receivables listed on Exhibit A to the FASA until Integra recovered a sum equal to the Advance.

169. Once Integra recovered a sum equal to the Advance, Quatro's assignment of the accounts in Exhibit A to the FASA would terminate, Integra would have no further right to collect these accounts, and the collection of these accounts should have reverted back to Quatro.

170. Upon information and belief, Integra has collected amounts from the accounts listed in Exhibit A to the FASA that exceed the Advance.

171. Indeed, the Trustee believes and, therefore, avers that Integra has, in fact, collected all of the accounts receivable listed in Exhibit A; however, rather than return the additional amounts over and above the Advance, Integra has kept these sums for its own pecuniary benefit.

172. The purpose of the FASA was to enable Quatro to be able to pay its rent while the Integra Transaction was occurring.

173. Since the Quatro Insiders had willfully and intentionally depleted the cash reserves of Quatro, Quatro had insufficient liquidity and, thus, needed additional funds to pay its debts.

174. Rather than include the Advance as part of the "purchase price" for the assets it purchased, Integra wanted to be repaid on account of the Advance and, thus, entered into the FASA to ensure that it would be repaid for the Advance out of the proceeds of the Debtors' accounts' receivable.

175. However, Integra was only to keep the proceeds of the Debtors' accounts receivable up to the amount of the Advance. Once the Advance had been repaid, in full, the balance of any collections and/or the accounts receivables themselves were to be returned to the Debtor.

176.    To date, Integra has not returned any of the accounts receivable and/or the proceeds thereof to either the Debtor or the Trustee.

177.    Integra's collection of amounts on the accounts listed on Exhibit A to the FASA that exceed the Advance is a breach of the FASA and the Debtor has sustained damages as a result thereof.

WHEREFORE, Plaintiff is entitled to recover, for the benefit of the unsecured creditors, damages related to Integra's breach of the FASA in an amount to be determined at trial.

### COUNT IX
### AVOIDANCE OF CHEBIN TRANSFERS
### UNDER 12 PA.C.S. § 5105 AND 11 U.S.C. § 544
### (AGAINST CHEBIN)

178.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

179.    Each of the Chebin Transfers was a transfer of Quarto's property to Chebin made within the four (4) year period immediately preceding the Petition Date, and each such Chebin Transfer constitutes a "transfer" within the meaning of the UFTA and the Bankruptcy Code.

180.    At all times material hereto, Quatro was insolvent and had at least one creditor prior to making each of the Chebin Transfers.

181.    Each time a Chebin Transfer occurred, Quatro was rendered even more insolvent by virtue of that Chebin Transfer.

182.    Quatro did not receive reasonably equivalent value on account of the Chebin Transfers.

183.    Accordingly, the Chebin Transfers constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S. § 5105 and Bankruptcy Code section 544 and, as such, they are recoverable from Chebin pursuant to Bankruptcy Code section 550(a).

WHEREFORE, Plaintiff is entitled to avoid and recover, for the benefit of the unsecured creditors, (i) the reasonably equivalent value of the Chebin Transfers; (ii) interest upon such amounts to the extent recoverable pursuant to the law; and (iii) reasonable attorneys' fees and costs.

## COUNT X
## AVOIDANCE OF CHEBIN TRANSFERS UNDER 11 U.S.C. § 548(A)(1)(B)
### (AGAINST CHEBIN)

184.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

185.    Each of the Chebin Transfers made by Quatro to Chebin was a "transfer" within the definition of 11 U.S.C. § 101(54)(D)(i) or (ii).

186.    Each of the Chebin Transfers was a transfer of property, or of an interest in property, of Quatro to Chebin.

187.    As set forth herein, Quatro did not receive reasonably equivalent value on account of the Chebin Transfers.

188.    In addition, at the time each of the Transfers was made or such obligation was incurred, Quatro: (a) was insolvent or became insolvent as a result of the Transfer; or (b) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

189.    Accordingly, the Chebin Transfers constitute avoidable fraudulent transfers pursuant to § 548(a)(1)(B) of the Bankruptcy Code and, as such, they are recoverable from Chebin pursuant to Bankruptcy Code section 550(a).

WHEREFORE, Plaintiff is entitled to avoid and recover, for the benefit of the unsecured creditors, (i) the reasonably equivalent value of the Chebin Transfers; (ii) interest upon such

amounts to the extent recoverable pursuant to the law; and (iii) reasonable attorneys' fees and costs.

**COUNT XI**
**AVOIDANCE OF KAZAKEVICH TRANSFERS**
**UNDER 12 PA.C.S. § 5105 AND 11 U.S.C. § 544**
**(AGAINST KAZAKEVICH)**

190.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

191.    Each of the Kazakevich Transfers was a transfer of Quarto's property to Kazakevich made within the four (4) year period immediately preceding the Petition Date, and each such Kazakevich Transfer constitutes a "transfer" within the meaning of the UFTA and the Bankruptcy Code.

192.    At all times material hereto, Quatro was insolvent and had at least one creditor prior to making each of the Kazakevich Transfers.

193.    Each time a Kazakevich Transfer occurred, Quatro was rendered even more insolvent by virtue of that Kazakevich Transfer.

194.    Quatro did not receive reasonably equivalent value on account of the Kazakevich Transfers.

195.    Accordingly, the Kazakevich Transfers constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S. § 5105 and Bankruptcy Code section 544 and, as such, they are recoverable from Kazakevich pursuant to Bankruptcy Code section 550(a).

WHEREFORE, Plaintiff is entitled to avoid and recover, for the benefit of the unsecured creditors, (i) the reasonably equivalent value of the Kazakevich Transfers; (ii) interest upon such amounts to the extent recoverable pursuant to the law; and (iii) reasonable attorneys' fees and costs.

## COUNT XII
## AVOIDANCE OF KAZAKEVICH TRANSFERS UNDER 11 U.S.C. § 548(A)(1)(B)
### (AGAINST KAZAKEVICH)

196.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

197.    Each of the Kazakevich Transfers made by Quatro to Kazakevich was a "transfer" within the definition of 11 U.S.C. § 101(54)(D)(i) or (ii).

198.    Each of the Kazakevich Transfers was a transfer of property, or of an interest in property, of Quatro to Kazakevich.

199.    As set forth herein, Quatro did not receive reasonably equivalent value on account of the Kazakevich Transfers.

200.    In addition, at the time each of the Transfers was made or such obligation was incurred, Quatro: (a) was insolvent or became insolvent as a result of the Transfer; or (b) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

201.    Accordingly, the Kazakevich Transfers constitute avoidable fraudulent transfers pursuant to § 548(a)(1)(B) of the Bankruptcy Code and, as such, they are recoverable from Kazakevich pursuant to Bankruptcy Code section 550(a).

WHEREFORE, Plaintiff is entitled to avoid and recover, for the benefit of the unsecured creditors, (i) the reasonably equivalent value of the Kazakevich Transfers; (ii) interest upon such amounts to the extent recoverable pursuant to the law; and (iii) reasonable attorneys' fees and costs.

## COUNT XIII
## RECOVERY OF CHEBIN TRANSFERS UNDER 11 U.S.C. § 550
### (AGAINST CHEBIN)

202.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

203.    The Trustee is entitled to avoid the Chebin Transfers pursuant to 11 U.S.C. §§ 544 and 548.

204.    Chebin was the initial transferee or was the immediate or mediate transferee of such initial transferee of the Chebin Transfers and is liable for the return of the Chebin Transfers (or the amount thereof).

205.    As a recipient of the actual and constructive fraudulent transfers set forth herein above, Chebin is liable as the initial transferee of the actual and constructive fraudulent transfers made by the Debtor.

206.    Pursuant to Bankruptcy Code section 550(a), the Trustee is entitled to recover from Chebin the Chebin Transfers or the amount thereof plus interest thereon to the date of payment as well as costs of this action.

WHEREFORE, Plaintiff is entitled to avoid and recover, for the benefit of the unsecured creditors, (i) any payments received by the Chebin in connection with the Chebin Transfers, pursuant to 11 U.S.C. §§ 548(a)(1)(B), and 550; and (ii) interest upon such amounts to the extent recoverable pursuant to the law.

## COUNT XIV
## RECOVERY OF KAZAKEVICH TRANSFERS UNDER 11 U.S.C. § 550
### (AGAINST KAZAKEVICH)

207.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

208.    The Trustee is entitled to avoid the Kazakevich Transfers pursuant to 11 U.S.C. §§ 544 and 548.

209.    Kazakevich was the initial transferee or was the immediate or mediate transferee of such initial transferee of the Kazakevich Transfers and is liable for the return of the Kazakevich Transfers (or the amount thereof).

210.    As a recipient of the actual and constructive fraudulent transfers set forth herein above, Kazakevich is liable as the initial transferee of the actual and constructive fraudulent transfers made by the Debtor.

211.    Pursuant to Bankruptcy Code section 550(a), the Trustee is entitled to recover the Kazakevich Transfers from Kazakevich, or the amount thereof plus interest thereon to the date of payment as well as costs of this action.

WHEREFORE, Plaintiff is entitled to avoid and recover, for the benefit of the unsecured creditors, (i) any payments received by Kazakevich in connection with the Kazakevich Transfers, pursuant to 11 U.S.C. §§ 548(a)(1)(B), and 550; and (ii) interest upon such amounts to the extent recoverable pursuant to the law.

## COUNT XV
## BREACH OF FIDUCIARY DUTY OF LOYALTY – FRAUDULENT TRANSFERS
### (AGAINST CHEBIN AND KAZAKEVICH)

212.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

213.    At all relevant times, Chebin was the President and CEO and 50% shareholder of Quatro.

214.    By virtue of Chebin's positions, a fiduciary relationship existed between Chebin and Quatro.

215.     Accordingly, Chebin owed fiduciary duties, including, but not limited to, the duty of loyalty, to Quatro and Quatro's stakeholders, including its creditors.

216.     At all relevant times, Kazakevich was the Secretary and Treasurer and 50% shareholder of Quatro.

217.     By virtue of Kazakevich's positions, a fiduciary relationship existed between Kazakevich and Quatro.

218.     Accordingly, Kazakevich owed fiduciary duties, including, but not limited to, the duty of loyalty, to Quatro and Quatro's stakeholders.

219.     In addition, at the time the Insider Fraudulent Transfers were made, Quatro was having difficulty paying its debts, and thus was, at least, within the zone of insolvency.

220.     As a consequence, the Quatro Insiders owed fiduciary duties to Quatro's creditors at the time the Insider Fraudulent Transfers were made.

221.     By causing Quatro to make the Insider Fraudulent Transfers for their exclusive benefit, the Quatro Insiders breached their fiduciary duties to Quatro and its creditors – including, but not limited to, the duties of loyalty and good faith.

222.     Indeed, the Quatro Insiders were personally motivated, not by the desire to benefit Quatro or its creditors, but by a desire to benefit personally by taking the Direct Insider Transfers for themselves, and receiving the value of the Third Party Insider Transfers.

223.     The Quatro Insiders' breaches of fiduciary duty of care and good faith to Quatro and its creditors proximately and actually caused damages to Quatro's estate and creditors, based on the depletion of funds and other assets from Quatro that may otherwise have been available to satisfy the claims of creditors, or otherwise be deployed to support Quatro's business needs.

224.   The Quatro Insiders' breach of their fiduciary duties to Quatro, as described hereinabove, was a significant factor in causing the demise of Quatro.

WHEREFORE, Plaintiff is entitled to judgment in her favor and against Chebin and Kazakevich and in an amount to be determined at trial based on the harm to the Debtor's unsecured creditors as a result of the Quatro Insiders' breach of fiduciary duties to Quatro and Quatro's creditors on account of the Insider Fraudulent Transfers; and interest upon such amounts to the extent recoverable.

## COUNT XVI
## BREACH OF FIDUCIARY DUTY OF CARE – FRAUDULENT TRANSFERS
### (AGAINST CHEBIN AND KAZAKEVICH)

225.   Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

226.   At all relevant times, Chebin was the President and CEO and 50% shareholder of Quatro.

227.   By virtue of Chebin's positions and role as member of the Quatro Board of Directors, he owed fiduciary duties, including, but not limited to, the fiduciary duty of care, to Quatro and Quatro's stakeholders, including its creditors.

228.   At all relevant times, Kazakevich was the Secretary and Treasurer and 50% shareholder of Quatro.

229.   By virtue of Kazakevich's positions, a fiduciary relationship existed between Kazakevich and Quatro.

230.   Accordingly, the Quatro Insiders owed fiduciary duties, including, but not limited to, the duty of care, to Quatro and Quatro's stakeholders, including its creditors.

231.   By virtue of Quatro's insolvency and/or undercapitalization, the Quatro Insiders owed fiduciary duties to Quatro's unsecured creditors, including, but not limited to, the duty of

care (1) to preserve and maximize the value of Quatro's assets for the benefit of its unsecured creditors, and (2) to act in a manner that would not injure Quatro or its unsecured creditors.

232.    As fiduciaries, the Quatro Insiders were obligated by the duty of care to act in a fully informed manner, in a manner consistent with the interests of Quatro, and with the highest degree of good faith.

233.    As fiduciaries, the Quatro Insiders were also obligated by their duty of care to act at all times using the amount of care that a reasonable person would use under similar circumstances.

234.    By causing Quatro to make the Insider Fraudulent Transfers for their exclusive benefit, the Quatro Insiders breached their fiduciary duties to Quatro and its creditors – including, but not limited to, the duties of care and good faith.

235.    As a result of the Insider Fraudulent Transfers, Quatro became insolvent or was left with unreasonably small business capital in relation to the business in which it was engaged, as it was left with a sum of debts, at fair valuations, greater than the sum of its assets.

236.    Because of the Quatro Insiders' breach of fiduciary duties to Quatro and its creditors, Quatro was forced into bankruptcy, substantially reducing the payments that could be made to Quatro's creditors.

237.    The Quatro Insiders' breach of their fiduciary duties to Quatro, as described hereinabove, was a significant factor in causing the demise of Quatro.

238.    The Quatro Insiders directly benefited from the Insider Fraudulent Transfers to the detriment of Quatro and its creditors.

239.    The Quatro Insiders acted in their own interest even though they knew or should have known that it would result in harm to Quatro and its unsecured creditors.

240.    Quatro and its unsecured creditors were substantially damaged as a result of the Quatro Insiders' breaches of fiduciary duties.

WHEREFORE, Plaintiff is entitled to judgment in her favor and against Chebin and Kazakevich and in an amount to be determined at trial based on the harm to the Debtor's unsecured creditors as a result of the Quatro Insiders' breach of fiduciary duties to Quatro and Quatro's creditors on account of the Insider Fraudulent Transfers; and interest upon such amounts to the extent recoverable.

### COUNT XVII
### UNJUST ENRICHMENT
### (AGAINST CHEBIN AND KAZAKEVICH)

241.    Plaintiff adopts and alleges all prior averments in this Complaint as though fully set forth herein.

242.    In light of Quatro Insiders' improper actions, as described hereinabove, the Quatro Insiders have been unjustly enriched by their receipt of valuable property, in the form of the Insider Fraudulent Transfers, for less than reasonably equivalent value and/or consideration.

243.    The Debtor conferred significant monetary benefits upon the Quatro Insiders by paying the Direct Insider Transfers to the Quatro Insiders, and by paying the Third Party Insider Transfers to certain third parties on the Quatro Insiders' behalf.

244.    As detailed herein, the Quatro Insiders were aware of, and had knowledge of, the benefits conferred upon them by the Debtor.

245.    Under these circumstances, as described hereinabove, it would be unjust and inequitable to permit the Quatro Insiders to retain the moneys, including, but not limited to, the Direct Insider Transfers and the value of the Third Party Insider Transfers, that the Quatro Insiders wrongfully received without providing reasonably equivalent value and/or sufficient consideration therefor.

246.    Plaintiff is therefore entitled to disgorgement and restitution of all economic benefits that the Quatro Insiders derived from the Debtor on account of the Insider Fraudulent Transfers.

WHEREFORE, Plaintiff is entitled to judgment in her favor and against the Quatro Insiders in an amount to be determined at trial based on harm to the Debtor's unsecured creditors, including, but not limited to, the value of Insider Fraudulent Transfers, attorneys' fees and costs, prejudgment interest, and any and all such other further relief as the Court deems necessary and proper.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests the entry of judgment in her favor and granting the following relief:

1.    Avoiding the Integra Fraudulent Transfer, or any and all portions thereof, and permitting the Trustee to recover the Integra Fraudulent Transfer, or the value thereof;

2.    Directing Integra to immediately pay the Trustee the amount of the Integra Fraudulent Transfer, or any and all portions thereof, or the value thereof, plus interest thereon and costs, pursuant to 11 U.S.C. § 550(a);

3.    Awarding prepetition and postpetition interest on the amounts owed by Integra to the full extent allowable under applicable law;

4.    Awarding pre-judgment interest on the Integra Fraudulent Transfer from the date of such transfer until the date of the judgment at the maximum legal rate and to the full extent allowable under applicable law;

5.    Awarding post-judgment interest on the Integra Fraudulent Transfer at the maximum legal rate from the date of judgment herein until the date the judgment is either paid in

full or otherwise satisfied, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

6.      Avoiding the Quatro Insider Transfers, or any and all portions thereof, and permitting the Trustee to recover the Quatro Insider Transfers, or the value thereof;

7.      Directing the Quatro Insiders to immediately pay the Trustee the amount of the Quatro Insider Transfers, or any and all portions thereof, or the value thereof, plus interest thereon and costs, pursuant to 11 U.S.C. § 550(a);

8.      Awarding prepetition and postpetition interest on the amounts owed by the Quatro Insiders on account of the Quatro Insider Transfers to the full extent allowable under applicable law;

9.      Awarding pre-judgment interest on the Quatro Insider Transfers from the date of such transfers until the date of the judgment at the maximum legal rate and to the full extent allowable under applicable law;

10.     Awarding post-judgment interest on the Quatro Insider Transfers at the maximum legal rate from the date of judgment herein until the date the judgment is either paid in full or otherwise satisfied, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

11.     Awarding compensatory damages in favor of the Trustee against each of the Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, including the Quatro Insiders' breaches of their fiduciary duties owed to Quatro, in an amount to be proved at trial, including interest thereon;

12.     Awarding appropriate restitution to the Trustee from Integra for Integra's unjust enrichment;

13.     Awarding appropriate restitution to the Trustee from the Quatro Insiders for the Quatro Insiders' unjust enrichment related to the Insider Fraudulent Transfers;

14.     Awarding the Trustee punitive and/or exemplary damages where such damages are available;

15.     Awarding the Trustee reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

16.     Such other and further relief as the Court may deem just and proper.


                                        Respectfully Submitted,

Dated: September 24, 2019               DUANE MORRIS LLP

                                        /s/ Lawrence J. Kotler
                                        Lawrence J. Kotler, Esq. (PA I.D. 56029)
                                        30 South 17th Street
                                        Philadelphia, PA 19103
                                        Telephone:    (215) 979-1514
                                        Facsimile:    (215) 979-1020
                                        Email: ljkotler@duanemorris.com

                                        *Counsel for Lynn Feldman, the Chapter 7
                                        Trustee for the bankruptcy estate of Quatro
                                        Systems, Inc.*

DM3\6086982.1